808 F.2d 1331
 13 Media L. Rep. 1640
 WALNUT PROPERTIES, INC., a California Corporation, and
Vincent Miranda, an individual, Plaintiffs/Appellees,
v.
CITY OF WHITTIER, a Charter City; M.D. Klaxton, R.L.
Henderson, L.A. Strong, Gene Chandler, V.A. Lopez, as
Members of the Whittier City Council; James Bale, as Chief
of Police of the City of Whittier; and John Robert
Flandrick, as City Attorney of the City of Whittier,
Defendants/Appellants.
 Nos. 84-5755, 84-6087.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 21, 1986.
As Amended Jan. 20, 1987.
As Amended on Denial of Rehearing and Rehearing En Banc
March 10, 1987.
 
 Stanley Fleishman, Los Angeles, Cal., for plaintiffs/appellees.
 J. Robert Flandrick, City Atty., City of Whittier & Burke, Williams & Sorensen, Katherine E. Stone, Benjamin S. Kaufman, Lisa E. Kranitz, Los Angeles, Cal., for defendants/appellants.
 On Remand from the Supreme Court of the United States.
 Before BOOCHEVER and BEEZER, Circuit Judges, and SOLOMON,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 In Walnut Properties, Inc. v. City of Whittier, nos. 84-5755, 84-6087 (9th Cir.1985) (mem.), [762 F.2d 1020 (Table) ], we affirmed the district court's findings and conclusions that the City's ordinance requiring a 1,000 feet separation between an adult theater and a church had been unconstitutionally motivated, that the ordinance had an unconstitutional effect, and that its infringement on first amendment rights was not justified. Thus, we held that the ordinance violated the first amendment because it was not shown to justify legitimate government needs, because it severely restricted protected speech, and because one of the City's reasons for enacting the ordinance was to suppress that speech. Id. at 2. We also held that Walnut Properties' action was not barred by the doctrine of res judicata, and that the district court did not abuse its discretion in awarding attorneys' fees to Walnut. Our disposition was vacated by the Supreme Court, City of Whittier v. Walnut Properties, --- U.S. ----, 106 S.Ct. 1255, 89 L.Ed.2d 566 (1986) (mem.), and the case remanded to this court for further consideration in light of City of Renton v. Playtime Theatres, Inc., --- U.S. ----, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The parties in Walnut Properties were ordered to submit supplemental briefs addressing the application of Renton on May 1, 1986. We have reconsidered this case in light of Renton, and we vacate the district court's decision. The district court applied our precedents in reaching its conclusions. Because these precedents have been modified by Renton, we find it necessary to remand so that the district court may make new findings and conclusions in light of Renton 's teachings.[1]
 
 FACTS
 
 2
 In Walnut Properties, the district court found that the City's ordinance substantially restricted first amendment interests, and that a motivating factor for enacting the ordinance was to suppress first amendment interests. The district court expressly held that "[t]he provision of the ordinance which prohibits an adult theater from operating within 1000 feet of a church is unconstitutional because the City failed to justify this prohibition."
 
 
 3
 Walnut Properties owned its theater and began exhibiting adult films in May 1977. On June 22, 1977, the City enacted its first "urgency" ordinance (No. 2116) imposing certain limitations on adult businesses. This ordinance was reenacted several times, resulting in the challenged Ordinance No. 2138 (Nov. 7, 1978). The district court found that
 
 
 4
 [e]xcept for its proximity to a church, Walnut's theater met all of the locational requirements of the first ordinance. The theater is located in the C-2 zone; is not within 500 feet of any lot classified in any of the R zones; is not within 1000 feet of any lot upon which there is located any public, private or parochial, elementary, Junior High, High School; is not within 1000 feet of any lot upon which there is located a city-owned ... public park; is not within 1000 feet of any lot on which there is located another adult business; and is not within 500 feet of any lot on which there is located a business with [specified types of alcohol beverage licenses].
 
 
 5
 The court further found that "Walnut Theatre is the only theater in Whittier exhibiting adult films, and it is within 1000 feet of a church." The City of Whittier had prepared a study and report on which the district court relied in part. The court found:
 
 
 6
 Prior to enacting the first ordinance, the City prepared a report dealing with the concentration of adult businesses and their effect upon immediately adjacent residential and commercial property. The report states that a "brief discussion with a representative of Whittier Presbyterian Church revealed that while the representative was very much aware of the presence of adult businesses, there was no evidence of direct impact on the church." The report noted that churches are closed during the peak hours when adult businesses operate. Therefore, the report stated, the effect of an adult business on a church would naturally be less than on parks.... The report did not reveal sufficient justification for prohibiting an adult theater from operating within 1000 feet of a church, nor did the City present any evidence revealing that any such justification existed.
 
 
 7
 The court referred to the testimony of Mr. Elvin Porter, Director of Planning of the City of Whittier. Mr. Porter "sought to justify the [1,000 feet] separation, stating that 'most churches are against the display of the human body ... for anyone that wants to view the human body and acts.' " The court found that "[i]t thus appears that a motivating factor in the decision to prohibit an adult business from operating within 1,000 feet of a church was to restrict plaintiffs' exercise of First Amendment rights." The court further found that "Mr. Porter also justified the separation of an adult theater from a church by stating that their proximity created a 'morals' conflict."
 
 
 8
 The court next expressly found that the ordinance "makes it impossible to operate an adult theater in the central business district of Whittier because there is no location in that area which is not within 1000 feet of a church, school or park, or within 500 feet of an R-zone." The court concluded that "[s]ince Walnut has the only theater in Whittier exhibiting adult films, its elimination would leave the City without any theaters showing such films, and the ordinance's effect would then be a total exclusion of adult theaters in the City of Whittier." Finally, the court found that
 
 
 9
 [t]he City has also failed to establish that its desire to prevent blighting and downgrading of commercial and residential areas adjacent to a concentration of adult businesses could not be accomplished without prohibiting an adult theater from operating within 1,000 feet of a church. Indeed, the proximity of an adult theater to a church appears to be totally unrelated to the "blighting and downgrading" of commercial and residential areas adjacent to "concentrated" adult businesses. There is no sufficient factual basis for the City's decision to prohibit an adult theater from operating within 1,000 feet of a church.
 
 ANALYSIS
 1. Motive
 
 10
 The Supreme Court stated in Renton that because the city's ordinance did not ban adult theaters altogether, but merely provided that such theaters may not be located within 1,000 feet of residential zones, family dwellings, churches, parks, or schools, the ordinance was properly analyzed as a form of time, place, and manner regulation. 106 S.Ct. at 928. The Court further stated, however, that it "has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." Id. (citations omitted) (emphasis added). The district court should thus look to the City's motive in enacting the ordinance before examining whether the ordinance is a valid content-neutral regulation of the time, place, and manner of protected speech.
 
 
 11
 The district court stated that "a motivating factor" in the City's decision to enact the ordinance was to restrict the exercise of first amendment rights. The court made this finding on the basis of testimony that most churches were opposed to the display of the human body. In Renton the Supreme Court rejected this court's reliance on Tovar v. Billmeyer, 721 F.2d 1260, 1266 (9th Cir.1983), cert. denied, 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984), which held that zoning decisions were invalid if a motivating factor in making them was to restrict the exercise of first amendment rights. 106 S.Ct. at 929. Thus, a finding that "a motivating factor" in enacting the ordinance is to restrict first amendment rights is not of itself sufficient to hold the regulation presumptively invalid. That presumption now applies only if the predominate purpose in enacting the ordinance is suppression of first amendment rights. Id.
 
 
 12
 The district court in this case made other findings from which it could be inferred that the purpose in enacting the ordinance was to suppress first amendment rights. The ordinance in this case does not by its terms ban adult theaters altogether, but the district court found that it had that effect. Moreover, there are indications in the record that the City enacted its ordinance in response to Walnut Properties' exhibition of adult films.
 
 
 13
 In Renton, the Court relied upon the district court's finding that "the Renton ordinance is aimed not at the content of the films shown ... but rather at the secondary effects of such theaters on the surrounding community. The District Court found that the City Council's 'predominate concerns' were with the secondary effects of adult theaters...." 106 S.Ct. at 929 (emphasis added by the Court). In contrast, the district court in this case found that the proximity of an adult theater to the church appeared to be "totally unrelated to the 'blighting and downgrading' of commercial and residential areas adjacent to 'concentrated' adult businesses." The court, however, did not have the benefit of Renton 's distinction between an improper motivating factor and an unconstitutional predominant purpose in enacting such an ordinance. See Renton, 106 S.Ct. at 929. As the Court discussed in Renton, the district court must conduct its inquiry into the city's motive within the limits set out in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968):
 
 
 14
 It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive....
 
 
 15
 Inquiries into congressional motives or purposes are a hazardous matter.... What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.
 
 
 16
 Id. at 383-84, 88 S.Ct. at 1682-83; see Renton, 106 S.Ct. at 929.
 
 
 17
 We remand for the district court to reexamine its findings and make additional findings if necessary to determine whether the City of Whittier enacted its ordinance for the predominant purpose of suppressing Walnut Properties' first amendment rights. If the court so finds, the ordinance should be declared invalid.
 
 2. Method
 
 18
 If the court finds that the predominant purpose, as opposed to a motivating factor, for enacting the ordinance was not improper, it should analyze the enactment as a form of time, place, and manner regulation. Renton, 106 S.Ct. at 928. The appropriate inquiry is whether the "ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." Id. at 930 (emphasis added).
 
 
 19
 We recognize that "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' " Renton, 106 S.Ct. at 930 (quoting Young v. American Mini Theatres, Inc., 427 U.S. 50, 71, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976)). Unlike the findings of the district court in Renton, however, the district court here expressly found that the City had failed to establish that its desire to prevent blighting and downgrading of commercial and residential areas adjacent to a concentration of adult businesses was related to the proximity of an adult theater to a church. There is no concentration of adult theaters in Whittier; the Walnut Properties' theater is the only one.
 
 
 20
 Furthermore, the City's interest in preventing urban blight and downgrading of residential and commercial properties might logically support the ordinance's requirement that adult businesses be 1,000 feet apart, but it might not support the requirement that they be 1,000 feet from a church. Although the City may rely on the studies and experiences of other cities, Renton, 106 S.Ct. at 930-31, the City here also relied on its own study, and asked that the court take notice of it. That study noted that a representative of the Whittier Presbyterian Church, though aware of the adult theater's proximity, said there was no evidence of direct impact on the church. Moreover, the report asserts that a separation of 1,000 feet is needed because it will "for the most part prevent[ ] [adult businesses] from locating within the same block as a church." The map of Whittier Village introduced by the City reveals that all the blocks which surround the Walnut Properties Theater are 500 feet on their longest side. It appears that the 1,000 feet requirement is not necessary to prevent such theaters from being located in the same block as a church.
 
 
 21
 The district court here held that the City failed to meet its burden of proving that its decision to separate a church and an adult theater by 1,000 feet furthers a compelling government interest. Thus, the court imposed a more difficult legal burden of proof than the one required by Renton : a substantial government interest. We remand for the court to determine whether the ordinance as designed by the City furthers a substantial government interest, or whether the City's restriction of Walnut Properties' first amendment freedom is "greater than is essential to the furtherance" of the asserted governmental interests. See American Mini Theatres, Inc., 427 U.S. at 80, 96 S.Ct. at 2457 (Powell, J., concurring).
 
 3. Availability of Other Sites
 
 22
 The Court stated in Renton that "[i]n our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city...." 106 S.Ct. at 932. Thus, even if the ordinance was enacted for a proper purpose and was designed to further a substantial interest, the court must still examine whether the City has effectively denied Walnut Properties a reasonable opportunity to open and operate an adult theater within the City.
 
 
 23
 In American Mini Theatres, 427 U.S. at 72-73, 96 S.Ct. at 2453 (plurality opinion of Stevens, J., joined by Burger, C.J., and White and Rehnquist, JJ.), and 427 U.S. at 84, 96 S.Ct. at 2439 (Powell, J., concurring), the Supreme Court held that a Detroit zoning ordinance requiring adult movie theaters to be more than 1,000 feet from other adult movie theaters was a reasonable time, place, and manner regulation of protected speech. The City of Whittier ordinance is similar to the American Mini Theatres ordinance with one exception: the City of Whittier ordinance would close the only existing business. The zoning ordinance in American Mini Theatres applied prospectively only and prescribed where adult theaters could be opened; it did not prohibit the operation of adult movie theaters throughout the city, and it did not force existing adult theaters to close. 427 U.S. at 52-55, 96 S.Ct. at 2443-45. The Detroit ordinances were not challenged on the ground that they
 
 
 24
 impose a limit on the total number of adult theaters which may operate in the city of Detroit. There is no claim that distributors or exhibitors of adult films are denied access to the market or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare. Viewed as an entity, the market for this commodity is essentially unrestrained.
 
 
 25
 Id. at 62, 96 S.Ct. at 2448.
 
 
 26
 If the ordinance at issue in American Mini Theatres had affected the operation of existing theaters, the Court indicated that the situation would have been different:
 
 
 27
 The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight."
 
 
 28
 Id. at 71-72 n. 35, 96 S.Ct. at 2453 n. 35 (plurality opinion of Stevens, J., joined by Burger, C.J., and White and Rehnquist, JJ.). Only four justices joined in Part III, the portion of American Mini Theatres from which this statement is taken. However, based on the dissenting opinions of Justice Stewart, id. at 84, 96 S.Ct. at 2459 (joined by Brennan, Marshall, and Blackmun, JJ.), and of Justice Blackmun, id. at 88, 96 S.Ct. at 2461 (joined by Brennan, Stewart, and Marshall, JJ.), there is little doubt that a majority would have questioned an ordinance putting all existing theaters out of business.
 
 
 29
 In Renton the Court found that the ordinance was not enacted for the purpose of suppressing the exercise of first amendment expression.
 
 
 30
 The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and generally "protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life," not to suppress the expression of unpopular views. As Justice Powell observed in American Mini Theatres, "[i]f [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location."
 
 
 31
 106 S.Ct. at 929 (citations omitted).
 
 
 32
 Rather, the Court found that Renton's ordinance allowed for reasonable alternative avenues of communication, because the ordinance left some 520 acres, or more than five percent of the entire land area of Renton, open to use as adult theater sites. Id. 106 S.Ct. at 932. The district court had found that the 520 acres of land consisted of " '[a]mple, accessible real estate,' including 'acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space that is criss-crossed by freeways, highways, and roads.' " Id. (citation omitted).
 
 
 33
 In this case, however, the district court found that the provision of the ordinance requiring a 1,000 feet separation of church and adult theater "makes it impossible to operate an adult theater in the central business district of Whittier," and that "[s]ince Walnut has the only theater in Whittier exhibiting adult films, its elimination would leave the City without any theaters showing such films, and the ordinance's effect would then be a total exclusion of adult theaters in the City of Whittier."
 
 
 34
 The evidence on this issue included the testimony of Mr. Porter, the City's Planning Director, for the City of Whittier, and Mr. Metcalfe, a real estate appraiser, for Walnut Properties. Mr. Porter testified that there were thirty-five acres in Whittier upon which an adult theater could be located. Mr. Metcalfe testified that there were twelve acres, all of which were in the Whitwood Shopping Center. In its Supplemental Brief, the City now contends that Mr. Porter testified that within Whittier, of the 742.5 acres zoned for commercial uses, 99.5 acres, or 13.4% of the total commercially zoned area, are available for adult businesses under the ordinance. Even if the City's higher figures are accepted, we note that the areas zoned for commercial uses make up only 19.2% of the total acreage in Whittier. This means that only 1.35% of the entire land area of Whittier is available for use as adult theater sites. This available area is significantly less than the five percent of the entire land area that was available in Renton. We also observe that Renton is a city of approximately 32,000 people. Renton, 106 S.Ct. at 927. Whittier has a population of about 70,000, at least twice that of Renton. Thus, Renton's 520 acres of available land takes on greater significance compared to Whittier's 99.5 acres. Of course, if the district court accepts Mr. Metcalfe's testimony of only 12 available acres, then the percentage of available land in Whittier diminishes significantly.
 
 
 35
 Furthermore, the availability of alternative sites must be considered in light of the ordinance's purpose and design. In Renton, the City designed its ordinance so as to concentrate adult theaters in the available areas. 106 S.Ct. at 931. Whittier designed its ordinance to eliminate concentrations of adult theaters. It prohibits adult theaters from locating within 1,000 feet of each other. We therefore remand this issue to the district court so that it may make specific findings as to the availability of land in light of Renton, and whether the City of Whittier has "effectively den[ied] [Walnut Properties] a reasonable opportunity to open and operate an adult theater within the city." 106 S.Ct. at 932.
 
 
 36
 VACATED and REMANDED.
 
 
 37
 BEEZER, Circuit Judge, concurring.
 
 
 38
 I agree that the judgment should be vacated and the cause remanded to the district court for further proceedings consistent with the Supreme Court's decision in City of Renton v. Playtime Theatres, U.S. ----, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 We reinstate, however, the portion of our prior memorandum disposition affirming the district court's decision not to apply the doctrine of res judicata. The award of attorneys' fees must await the outcome of the remand