**DiMa CORPORATION, Plaintiff,**

v.

**THE TOWN OF HALLIE, Defendant.**

**No. 98–C–240–C.**

United States District Court,
W.D. Wisconsin.

Oct. 16, 1998.

Randall D.B. Tigue, Minneapolis MN, for DiMa Corporation.

Joel L. Aberg, Weld Riley Prenn & Ricci, EAU Claire WI, for Town of Hallie.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action arising under the First and Fourteenth Amendments. Subject matter jurisdiction is present. Plaintiff DiMa Corporation alleges that Ordinance 1.06, enacted by defendant Town of Hallie, violates plaintiff's First Amendment rights by restricting the hours of its dissemination of sexually explicit expression. Presently before the court are defendant's motion for summary judgment, motion to strike portions of plaintiffs proffered affidavit testimony, motion to strike plaintiff's proffered expert testimony and motion for attorney fees and costs. Because I find that Ordinance 1.06 is content-neutral and narrowly tailored to serve defendant's legitimate interest and leaves open ample alternative means of communi-cation, I will grant defendant's motion for summary judgment. I will deny defendant's motions to strike because they are rendered moot by the order granting summary judgment. I will deny defendant's motion for attorney fees and costs.

Initially, a few comments are warranted concerning plaintiffs summary judgment submissions. Plaintiff asks the court to incorporate into its response brief the arguments and "factual assertions" from its affidavits and memorandum submitted in support of its earlier motion for a preliminary injunction and restraining order. All "factual assertions" made in a summary judgment brief must cite to a proposed finding of fact which itself rests on a citation to evidence in the record. *See* Procedures to be Followed on a Motion for Summary Judgment ("*All* facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact.") The factual assertions in plaintiffs earlier memorandum do not rest on such citations. They will be disregarded. Similarly, plaintiffs response brief includes several facts not the subject of proposed findings of fact. These too will be disregarded. Moreover, most of plaintiffs proposed findings of "fact" do not cite to the record. Most are not facts at all, but are legal arguments. These too will be disregarded.

Defendant moves to strike affidavit testimony submitted by plaintiff. First, defendant moves to strike affidavit testimony from lay witnesses whose names were not disclosed to defendants by July, 1, 1998, as required by the court's pretrial order. Second, defendant moves to strike affidavit testimony from an alleged expert witness whose name was not disclosed to defendants by August 21, 1998, as required by the court's pretrial order. Third, defendant moves to strike affidavit testimony from plaintiffs attorney that contains a partial transcript of defendant's board meeting of April 6, 1998, because it is not certified in compliance with Fed.R.Evid. 902. Defendant asserts several reasons

why this testimony should not be stricken. I find that even if the subject testimony is admitted, defendant is still entitled to summary judgment.

I find there is no genuine dispute about the following material facts:

## FACTS

Plaintiff is a corporation organized under the laws of the state of Minnesota. Defendant is a municipality organized under the laws of the state of Wisconsin.

Plaintiff operates an adult-oriented business known as Pure Pleasure within the town's limits. Pure Pleasure offers for sale non-obscene sexually explicit books and magazines and affords the opportunity for watching non-obscene sexually explicit videos in private viewing booths.

Shortly after learning that plaintiff intended to operate Pure Pleasure within town limits, the chairman of defendant's town board contacted the town's attorney for advice about defendant's regulatory authority over plaintiff. The lawyer informed the board about the experiences of the towns of Eau Claire and West Allis, Wisconsin in attempting to regulate adult-oriented businesses. The board instructed the lawyer to draft an ordinance. Public hearings were held on the draft ordinance.

On March 2, 1998, defendant enacted Ordinance # 140 to regulate "adult-oriented establishments." Pure Pleasure is an adult-oriented establishment within the meaning of the ordinance. Among other regulations, Section 1.02 of the ordinance states:

> The Town Board finds that adult-oriented establishments may by their nature, design and intended use be conducive to high-risk sexual behavior and constitute a potential disturbance to the public peace and good order. High-risk sexual behavior has the potential of exposing persons to among other things, the Human Immunodeficiency Virus (HIV) and Acquired Immune Deficiency Syndrome (AIDS). AIDS is currently determined to be irreversible and uniformly fatal. The operation of such es-

tablishments, although protected to a certain degree as an exercise of free speech rights under the State and Federal Constitutions, is also found to present a potential for disorderly and anti-social behavior requiring, for the good of the residence of the Town, that the Town Board regulate this type of activity. This section is created to provide minimum standards for such adult-oriented establishments in order to protect the general health, safety and welfare of the citizenry, by regulating those features of adult-oriented establishments which tend to facilitate and promote high-risk sexual behavior and by providing regulations which aid in the surveillance and detection of unlawful activities within such premises. It shall be the further purpose of this ordinance to protect and promote the public peace and good order through regulation of the conduct of business of adult-oriented establishments.

Section 1.06 of the ordinance provides: No adult-oriented establishment shall be open between the hours of 2 o'clock a.m. and 8 o'clock a.m., Monday through Friday or between 3 o'clock a.m. and 8 o'clock a.m. Saturdays or between the hours of 3 o'clock a.m. and 12 noon on Sundays.

The ordinance contains other regulations but only section 1.06 is challenged in this litigation. Adult-oriented businesses are the only businesses in town subject to hour restrictions. Other businesses in town, including a restaurant, convenience store, and gas station, are open 24 hours. By stipulation, defendant has not enforced section 1.06 pending resolution of this litigation.

## OPINION

██ Speech including printed matter and film that is sexually explicit but not obscene is protected by the First Amendment. *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 65–66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). The Fourteenth

Amendment extends this protection to state and local levels. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). The most exacting scrutiny is applied to regulations that suppress, disadvantage or impose differential burdens upon speech because of its content. *Turner Broadcasting System, Inc., v. F.C.C.,* 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). In contrast, regulations that are content-neutral are subject to an "intermediate" level of scrutiny, because they usually pose a less substantial risk of removing certain ideas or viewpoints from the public dialogue. *Id.* "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not on others." *Ward v. Rock Against Racism,* 491 U.S. 781, 792, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Content-neutral regulations include those that restrict the time, place, or manner of expression in order to ameliorate undesirable secondary effects of that expression. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Time, place, and manner regulations pass constitutional muster if they (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication of the information. *Ward,* 491 U.S. at 791, 109 S.Ct. 2746.

In the Supreme Court's latest examination of the constitutional standard to be applied in scrutinizing the regulation of sexually explicit speech, *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), no single opinion commanded a majority. *Barnes* concerned a municipality's attempt to regulate public nudity, including nude dancing. A plurality of the Court thought that nude dancing was speech protected by the First Amendment, but that no evidence of secondary effects was necessary to justify its regulation; rather, the government's interest in protecting "order and morality" was suffi-

cient justification. *Id.* at 569, 111 S.Ct. 2456. Justice Scalia, conversely, thought that the regulation was not subject to First Amendment scrutiny because it was a general law regulating conduct not directed specifically at expression. *Id.* at 572, 111 S.Ct. 2456 (Scalia, J., concurring). Justice Souter adhered most closely to the Court's earlier decision in *Renton,* holding that nude dancing was subject to First

Amendment protection and that some evidence was required that could show a rational basis for the government's conclusion that (1) the regulated activity could potentially produce undesirable secondary effects and (2) the regulation might alleviate those effects. *See id.* at 581–87, 111 S.Ct. 2456 (Souter, J., concurring).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). In the *Marks* sense, the "narrowest opinion" "must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." *Rappa v. New Castle County,* 18 F.3d 1043, 1057 (3d Cir.1994) (quoting *King v. Palmer,* 950 F.2d 771, 781 (D.C.Cir.1991) (en banc)). If there is no such common denominator, then the Court's next most recent opinion that commanded a majority remains the law of the land. In this instance that would be *Renton.* The Fifth, Sixth, and Eleventh Circuits have agreed that Justice Souter's concurrence is the narrowest opinion in *Barnes* and have followed his concurrence in applying the ruling of that case. *See J & B Entertainment, Inc. v. City of Jackson,* 152 F.3d 362 (5th Cir.1998); *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129 (6th Cir.1994); *International Eateries of*

*America, Inc. v. Broward County,* 941 F.2d 1157 (11th Cir.1991). It is not clear to me that Justice Souter's opinion embodied a position implicitly improved by a majority of the Court. However, it is not necessary to decide whether to follow Justice Souter's concurrence in *Barnes.* This case can be decided by the Court's earlier holding in *Renton* (which, incidentally, is substantially consistent with Justice Souter's concurrence in *Barnes* ) that evidence of secondary effects justifies content-neutral regulation. Therefore, where I refer to Justice Souter's concurrence in *Barnes,* it is not to follow his opinion in that case, but rather for the persuasive guidance his concurrence offers in interpreting *Renton.*

 A local government's significant interest in preserving the quality and character of neighborhoods, preventing the spread of disease, and preventing crime can support time, place, and manner restrictions on adult entertainment including adult bookstores, if the interest is set forth properly. *See, e.g., Renton,* 475 U.S. at 50, 106 S.Ct. 925. The local government can meet the burden of justifying its restriction either by developing evidence of secondary effects prior to enactment of the regulation or by adducing such evidence at trial. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 582, 111 S.Ct. 2456, 115 L.Ed.2d 504 (Souter, J., concurring). The local government need not conduct its own studies of secondary effects, but may rely upon the experiences of other local governments, as well as studies conducted by them, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem" addressed by the regulation. *Renton,* 475 U.S. at 52, 106 S.Ct. 925. The government is not required to show that the regulated activity actually causes the secondary effects, only that it reasonably believes that "the effects are *correlated* with the existence of such establishments." *Barnes,* 501 U.S. 560, 585, 111 S.Ct. 2456, 115 L.Ed.2d 504 (Souter, J., concurring) (emphasis added).

 Regulations are narrowly tailored to serve a significant government interest if the government shows that it has a reasonable basis for belief that the regulation enacted will ameliorate the correlated secondary effects in fact and the regulation is not substantially broader than necessary to achieve its interest. *See Ward,* 491 U.S. at 800, 109 S.Ct. 2746; *J & B Entertainment, Inc. v. City of Jackson,* 152 F.3d 362, 373 (5th Cir.1998). Thus in order to satisfy the first two prongs of the *Ward* three prong test, the government is required to show (1) that it has evidence upon which to base a reasonable belief that there is a correlation between the activity regulated and the alleged secondary effect of that activity and (2) that it reasonably believes the regulation enacted ameliorates the correlated secondary effect and the regulation is not substantially broader than necessary to achieve that goal.

 In reality, this not a particularly onerous burden for the government to meet. All it need do is point to studies or experiences from other towns that show a correlation between the business and the secondary effects it seeks to regulate and explain why it reasonably believes the regulation it has enacted will ameliorate those effects without being substantially broader than necessary. The question now is whether defendant has crossed this easy threshold or collapsed short of it. It is not the court's job to carry defendant across. *See Phillips v. Borough of Keyport,* 107 F.3d 164, 175 (3d Cir.1997) (en banc) ("Our First Amendment jurisprudence requires that the Borough identify the justifying secondary effects with some particularity, (and) that they offer some record support for the existence of those effects and for the Ordinance's amelioration thereof"); *J & B Entertainment,* at 373 (citing *Renton,* 475 U.S. at 48, 106 S.Ct. 925) ("On summary judgment and at trial, the government bears the burden of justifying the challenged enactment by introducing sufficient evidence"). "To insist on less is to reduce the First Amendment to a charade in this area." *Phillips,* 107 F.3d at 175.

Defendant manages to make its minimal showing, but not by any great margin. The ordinance it enacted cites secondary effects such as the spread of sexually transmitted diseases but cites no studies or experiences that show why the town believes such effects are correlated with plaintiffs business. Rather, it concludes by its "nature, intended use, and design" plaintiffs business is conducive to such effects. Mere conclusion is insufficient to pass constitutional muster: *evidence* upon which to base conclusion is required. *See Renton,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. Further, the ordinance offers no evidence of a rational basis for belief that the hours restriction will help to ameliorate the spread of sexually transmitted diseases or any other effects it lists. Plaintiff is correct, therefore, in arguing that the ordinance itself does not offer an evidentiary basis to substantiate defendant's claim that its ordinance is content-neutral and narrowly tailored to serve a significant government interest. However, in its submissions to this court, defendant states that it relied on the experience of West Allis, Wisconsin, in deciding to enact that city's ordinance and that the "same factors" cited by that city in enacting its restricted hours of operation ordinance motivated defendant. West Allis relied on evidence from several other cities, including Indianapolis, Austin, Chattanooga, Detroit and Seattle, that showed a correlation between adult businesses and the secondary effect of crime. *Tee & Bee, Inc. v. City of West Allis,* 936 F.Supp. 1479, 1485 n. 3 (E.D.Wis.1996). Relying on West Allis's use of evidence of secondary effects from other cities, defendant states, it reasonably believes that adult businesses are correlated with crime and that its ordinance is narrowly tailored to help ameliorate crime because "the restricted hours of operation fall within the period of time when crime is more likely to occur and law enforcement personnel are more likely to be busy with other matters." Brief in Support of the Defendant's Motion for Summary Judgment, Dkt. # 20, at 7 (quoting *Tee & Bee, Inc.* at 1485). Just as in *Renton,* defendant seems to have gathered most of its "evidence" by reading prior decisions in which other municipalities were sued under similar circumstances. Regardless, just as in *Renton,* as "long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem," it is evidence enough. *Renton,* 475 U.S. at 52, 106 S.Ct. 925. Moreover, it appears from Justice Souter's opinion in *Barnes,* 501 U.S. at 582, 111 S.Ct. 2456, that this evidence can be developed prior to enactment of the regulation *or* adduced at trial (or, presumably, as in this case, on a motion for summary judgment). *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 582, 111 S.Ct. 2456, 115 L.Ed.2d 504 (Souter, J., concurring). Certainly nothing in the *Barnes* plurality opinion would prevent the town from adducing evidence of secondary effects post-enactment, since the plurality (unlike Justice Souter) would not require the town to produce any evidence at all. *See Barnes,* 501 U.S. at 568, 111 S.Ct. 2456 ("It is impossible to discern, other than from the text of statute, what governmental interest the Indiana legislators had in mind when they enacted this statute").

Plaintiff is not convincing when it argues that defendant was actually motivated by a desire to suppress its speech because of sexually explicit content rather than by a desire to ameliorate crime or by any other of a number of factors defendant claims to have been motivated by. Even accepting plaintiff's contention as true for purposes of summary judgment, this court can "not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *Renton,* 475 U.S. at 48, 106 S.Ct. 925 (quoting *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). The court does not ask why defendant *actually* enacted its ordinance; it asks whether defendant has offered evidence that it *could have* enacted it for a content-neutral reason. *See J & B Entertainment,* 152 F.3d at 373("We do not ask whether the regulator subjectively believed or was motivated by other con-

cerns, but whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion").

Reading about the experience of West Allis as described in *Tee & Bee*, an objective lawmaker *could have* concluded that there is a correlation between adult businesses and crime and that hour restrictions are likely to help prevent crime since the hours restricted are when crime is more likely to occur and officers are more likely to be busy with other matters. Thus, defendant has shown that it has evidence upon which to base a reasonable belief of a correlation between adult businesses and the secondary effect of crime and that it reasonably believes the regulation enacted is narrowly tailored to ameliorate the correlated secondary effect.

Plaintiff disputes that crime is correlated with its business and more likely to occur at its business during the restricted hours in three ways. None of them is helpful to its cause. First, plaintiff offers expert testimony that crime was not correlated with adult businesses in Phoenix. Even if I admitted this testimony and accepted it as true, it could not help plaintiff. That one study says crime is not correlated with adult businesses does not mean that defendant could not reasonably believe the many studies that say it is. Second, plaintiff insists that crime is just as or more likely to occur at other businesses open during the hours when it alone is forced to shut its doors. The question is not whether crime is more likely to occur at plaintiffs business than other places. The question is whether defendant has a rational basis to believe crime is correlated with plaintiffs business. It does. Moreover, even if plaintiff is correct, its argument simply reinforces defendant's argument that police are less likely to be able to respond to crime at plaintiffs business because they will be engaged elsewhere. Third, plaintiff states that one of defendant's police officers once told a Pure Pleasure employee that he was glad Pure Pleasure was open during the restricted hours because it helped prevent crime. Even

ignoring the obvious hearsay problem in this statement, it is difficult to imagine how this is relevant. The court does not ask whether the police think the regulation will help prevent crime. The court does not even ask whether the town board thinks the regulation will help prevent crime. The court asks whether the board has cited evidence that could have provided a rational basis for belief that the ordinance might help prevent crime. The board has done so, and no more is required.

Finally, defendant asserts, and plaintiff does not dispute, that the hours restriction leaves open ample alternative channels for communication of the plaintiffs sexually explicit expression. For example, defendant argues, plaintiff can operate its store during regular business hours and via the Internet when it is closed. Because plaintiff does not respond to this assertion, I will assume it concedes the issue.

The regulation is justified without reference to the content of the regulated speech, because its purpose is to curb the secondary effect of crime, which plaintiff could reasonably believe is correlated with plaintiffs business, in light of West Allis's evidence. The regulation is narrowly tailored to serve the significant government interest of preventing crime when it is most likely to occur and when law enforcement is least capable of responding to it, while allowing plaintiff to operate unfettered at all other times. The regulation leaves open ample alternative channels for communication of plaintiffs speech. Thus, defendant's regulation has satisfied the three-part *Ward* test and is constitutional. Defendant is entitled to summary judgment.

Defendant asks that plaintiff be required to pay attorney fees and costs because "there is no precedential foundation present which would prevent [plaintiffs claim] from being found to be frivolous." What this is supposed to mean is unclear. Defendant and plaintiff have cited a large body of "precedential foundation" regard-

ing similar time, place, and manner restrictions on sexually explicit speech. In a few of those cases, on similar facts, the plaintiff business won; in most, the defendant town won. In no case was the loser's claim deemed frivolous. There is no reason to deem it so here. Plaintiffs motion will be denied.

## ORDER
IT IS ORDERED that

1. The motion of defendant Town of Hallie for summary judgment is GRANTED;

2. The motion of defendant Town of Hallie to strike portions of plaintiff DiMa Corporation's affidavit testimony is DENIED as moot;

3. The motion of defendant Town of Hallie for attorney fees and costs is DENIED;

4. The clerk of court is directed to enter judgment for defendant Town of Hallie and close this case.