**Revised September 9, 1998**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-60865
_____

J & B ENTERTAINMENT, INC,

                    Plaintiff - Appellant,

versus

CITY OF JACKSON, MISSISSIPPI,

                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

August 21, 1998

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The City of Jackson ("the City" or "Jackson") enacted an ordinance banning public nudity, with certain exceptions ("the Ordinance"). J & B Entertainment, Inc. ("J&B"),[1] the operator of a club featuring live female nude dancing, brought suit challenging

---

[1] Prior to oral argument, we granted J&B's motion to substitute itself in place of the former appellant, JML Club Management, Inc., which initially brought this suit. For the sake of clarity, we refer to the appellant as J&B throughout the opinion, even where JML took the actions in question.

the constitutionality of the Ordinance and seeking declaratory and injunctive relief.  J&B filed a motion for summary judgment, which the district court denied, instead granting summary judgment in favor of the City.  J&B appealed and, on the skeletal record now before us, we vacate the district court's grant of summary judgment in favor of the City on factual grounds and remand with instructions.  We affirm the district court's denial of J&B's summary judgment motion as a matter of law.

I

In February 1995, J&B opened Legends Cabaret, a club featuring live female nude dancing. Jackson enacted the Ordinance the following month. The Ordinance prohibits persons physically present in public places from knowingly or intentionally: (1) engaging in sexual intercourse; (2) appearing in a state of nudity; or (3) fondling the genitals of himself, herself, or another person.[2] "Nudity" is defined as "the showing of the human genitals, anus, or the female nipple."  Persons "engaged in expressing a matter of serious literary, artistic, scientific or political value," are excepted from the Ordinance's reach ("the exception"). Supervisors, managers, owners, and employers of a person who appears in a state of nudity may be guilty of a misdemeanor.  Preambulatory clauses to the Ordinance provide that the City enacted the Ordinance because of its interests in protecting order and morality and in combating

---

[2] The text of the Ordinance is set out in Appendix A.

-2-

secondary effects associated with public nudity. The record before us, however, does not indicate whether the City considered any studies on secondary effects prior to enacting the Ordinance.

After J&B brought an action challenging the constitutionality of the Ordinance, the district court directed both parties to submit motions for summary judgment. Although J&B submitted a motion for summary judgment, the City did not.[3] Although no evidence in the record specified what specific secondary effects may have motivated the City to enact the Ordinance, the district court then issued an order denying J&B's summary judgment motion and granting summary judgment in favor of the City.[4] As applied to J&B, the court found the Ordinance constitutional under the Supreme Court's decision in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991), and rejected J&B's as applied and facial vagueness and overbreadth arguments. The district court also rejected J&B's challenges to the Ordinance

---

[3] The district court's opinion suggests that, although the City did not file a summary judgment motion, it may have filed a response to J&B's summary judgment motion. The district court docket sheet does not list, and the record on appeal does not contain, this response. If it exists, we have not been apprised of its contents. Because there is no record of the filing of the City's response, we will assume that the City did not respond to J&B's summary judgment motion.

[4] The district court quoted our opinion in *Supreme Beef Processors, Inc. v. Yaquinto*, 864 F.2d 388, 393 (5th Cir. 1989), for the proposition that "when 'one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment.'" (quoting *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985)). J&B has not challenged this conclusion, and we need not comment upon it further. *See Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir. 1997).

-3-

under state law.  J&B's timely appeal followed.

                                II

     We review the grant of summary judgment *de novo*, taking the facts in the light most favorable to the nonmovant below.  *See New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  District court determinations of state law are also reviewed *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 239, 111 S. Ct. 1217, 1221, 113 L. Ed. 2d 190 (1991).  Summary judgment is appropriate where the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

                                III

     We turn our attention first to the challenges that J&B brings against the Ordinance on overbreadth and vagueness grounds, both as applied and facially.  "The overbreadth and vagueness doctrines are related yet distinct."  *American Booksellers v. Webb*, 919 F.2d 1493, 1505 (11th Cir. 1990). The vagueness doctrine protects individuals from laws lacking sufficient clarity of purpose or precision in drafting.  *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217-18, 95 S. Ct. 2268, 2276-77, 45 L. Ed. 2d 125 (1975).  "Overbroad legislation need not be vague, indeed it may be too clear; its constitutional infirmity is that it sweeps protected activity within its proscription."  *M.S. News Co. v. Casado*, 721 F.2d 1281, 1287 (10th Cir. 1983).

                               -4-

A

J&B posits that the Ordinance is facially overbroad because it infringes upon protected First Amendment conduct. In the district court, J&B conceded that the City removed much, though not all, of the possible overbreadth through the exception's exemption of persons "engaged in expressing a matter of serious literary, artistic, scientific or political value."

Persons to whom a statute may be constitutionally applied normally lack standing to argue that a statute is unconstitutional if applied to persons or situations not before the court. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 2915, 37 L. Ed. 2d 830 (1973). Standing requirements in the First Amendment context, however, are relaxed "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S. Ct. at 2916; *see also Board of Airport Comm'rs v. Jews for Jesus*, *Inc.*, 482 U.S. 569, 574, 107 S. Ct. 2568, 2572, 96 L. Ed. 2d 500 (1987). Standing to bring a facial overbreadth claim, however, is extremely limited:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct))even if expressive))falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct . . .

> where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick,* 413 U.S. at 615, 93 S. Ct. at 2917-18.

After carefully considering the arguments that J&B advances, we find that the Ordinance's alleged overbreadth, when compared to its plainly legitimate sweep, is neither real nor substantial. J&B hypothesizes that the Ordinance may be overbroad because it infringes upon many forms of expression protected by the First Amendment: "the New Stage Theatre in Jackson perform[ing] a production of *Hair,*" "nude infant babies in public," "a woman breast feed[ing] in the park," "a nude political debate in the streets of Jackson," and "John Grisham read[ing] one of his books in the nude." Nude infants and women breast feeding in a park are not protected by the First Amendment because they are not engaged in expressing any idea.[5] *Cf. Barnes*, 501 U.S. at 571, 111 S. Ct. at 2463 (explaining that the First Amendment does not protect nude sunbathers); *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S. Ct. 1591, 1595, 104 L. Ed. 2d 18 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes))for example, walking down the street or meeting one's friends at a shopping mall))but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.");

---

[5] We express no opinion as to whether nude infants or public breast feeding may be protected by other constitutional or statutory provisions.

*Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1253 (5th Cir. 1995)(rejecting overbreadth argument because topless bar patrons do not have a protected First Amendment right to touch nude dancers). If John Grisham reads one of his novels in the nude or the New Stage Theatre stages a production of "Hair," courts can evaluate whether these activities fall within the scope of the exception. *See Broadrick*, 413 U.S. at 615-616, 93 S. Ct. at 2918 ("[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."); *Miller v. California*, 413 U.S. 15, 25, 93 S. Ct. 2607, 2615, 37 L. Ed. 2d 419 (1973) ("[T]he First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."). Therefore, although hypothetical examples in which the Ordinance may be overbroad can be imagined, these examples, in comparison to its legitimate sweep, are not substantial. *See Broadrick*, 413 U.S. at 615, 93 S. Ct. at 2918.

Other considerations strengthen our conclusion that the Ordinance is not substantially overbroad. The Supreme Court has rejected a facial overbreadth challenge to an Ohio statute criminalizing the possession of child pornography containing an exception similar to that found in the Ordinance because the exception in that statute removed any substantial overbreadth. *See*

-7-

*Osborne v. Ohio*, 495 U.S. 103, 112 n.9, 110 S. Ct. 1691, 1698 n.9, 109 L. Ed. 2d 98 (1990). Moreover, "[a]pplication of the overbreadth doctrine . . . is, manifestly, strong medicine. It has been employed only by the Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613, 93 S. Ct. at 2916. Because the Ordinance is not substantially overbroad, any remaining ambiguities can be clarified in future cases. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 61, 96 S. Ct. 2440, 2448, 49 L. Ed. 2d 310 (1976); *Broadrick*, 413 U. S. at 613, 93 S. Ct. at 2916 ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."). Accordingly, we reject J&B's overbreadth challenge.

B

J&B next contends that the Ordinance is void for vagueness, both as applied and facially. "[A]n enactment is void for vagueness if its prohibitions are not clearly defined."[6] *Grayned v. City of*

---

[6] The Supreme Court has set forth several reasons for the prohibition of vagueness:

> [B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Rockford*, 408 U.S. 104, 109, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972). In determining whether a statute is vague, we view the law from the standpoint of a person of ordinary intelligence. *See id.*

1

As applied to J&B, we conclude that the Ordinance and its exception are not vague. J&B and its employees can clearly understand that totally nude dancing violates the Ordinance. J&B has not argued that the terms "nipple," "anus," or "genitals" are vague or that it and its employees cannot understand their meaning. *See Dodger's Bar & Grill v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1444-45 (10th Cir. 1994) (rejecting argument that ordinance prohibiting fondling of genitals, acts simulating sexual intercourse, or the displaying of human genitals, buttocks, anus, or part of the female breast was vague)*; Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir. 1986) (rejecting void-for-vagueness argument for statute that prohibited caressing or fondling of dancers by patrons of nude dancing bar). J&B conceded below that the entertainment performed by its dancers lacks any serious literary, artistic, political, scientific or social value. *Cf. Walker v. City of Kansas City,* 911 F.2d 80, 87 (8th Cir. 1990) (rejecting contention that nude dancers have any serious literary, artistic, political, or scientific value). Thus, we reject J&B's as applied vagueness challenge. *See Broadrick*, 413 U.S. at 608, 93

---

*Grayned,* 408 U.S. at 108-09, 92 S. Ct. at 2298-2299 (internal citations omitted).

S. Ct. at 2914 ("[E]ven if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much.").

                                    2

Because the Ordinance as applied to J&B is not vague, J&B may proceed on its facial vagueness challenge only if the Ordinance's effect on legitimate expression is "real and substantial *and* the language of the ordinance is not readily subject to a narrowing construction by the state courts." *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982) (emphasis added). "Real and substantial" for a facial vagueness test has the same meaning as for a facial overbreadth challenge. *See Young*, 427 U.S. at 60, 96 S. Ct. at 2447.

J&B argues that a person of ordinary intelligence could not understand the words of the exception))"serious literary, artistic, scientific or political value"))or whether her conduct fell within the terms of the exception. Jackson, however, did not pull these words from thin air. They are drawn from the third prong of the obscenity test enunciated in *Miller*, 413 U.S. at 24, 93 S. Ct. at 2615, appear as one prong of the Mississippi statute defining obscenity, *see* MISS. CODE ANN. § 97-29-103(1)(b), and are the subject of a plethora of opinions handed down by state and federal courts

-10-

throughout this nation in the quarter century since *Miller* was decided. *See Barnes*, 501 U.S. at 585 n.2, 111 S. Ct. at 2470 n.2 (Souter, J., concurring); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 136 (6th Cir. 1994). Though J&B may argue that these words are inherently vague, the Supreme Court itself has not done better, and "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110, 92 S. Ct. at 2300. Moreover, the Ordinance contains a knowledge requirement, further limiting the potential for individuals to be ensnared inadvertently in its grasp. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1983) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). Thus, the terms of the exception do not contain real and substantial vagueness.

J&B also argues that the Ordinance is facially vague because it does not specify who should determine whether an activity has "serious literary, artistic, scientific or political value" or how they should make that determination. We reject this argument because, as noted above, these words appear as one prong of the *Miller* obscenity test and MISS. CODE ANN. § 97-29-103(1)(b). The experience gained by private persons, attorneys, police, prosecutors, and courts in interpreting *Miller* and § 97-29-

-11-

103(1)(b) may aid them in their interpretation of the Ordinance and in deciding who should make the necessary determinations. Further guidance, to the extent any is needed, can be supplied by appellate courts. *See Miller*, 413 U.S. at 25, 93 S. Ct. at 2615 ("[T]he First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.").

J&B additionally argues that the Ordinance is void for vagueness because it "impermissibly delegates basic policy matters to policemen, judges, and juries." *See Grayned*, 408 U.S. at 108-09, 92 S. Ct. at 2299; *Kolender v. Lawson*, 461 U.S. 352, 358-60, 103 S. Ct. 1855, 1858-59, 75 L. Ed. 2d 903 (1983). We again note that J&B has not argued that the terms "nipple," "anus," or "genitals" are vague or that a person of reasonable intelligence cannot understand the meaning of these terms. *See Dodger's Bar & Grill*, 32 F.3d at 1444-45; *Kev*, 793 F.2d at 1057. In the absence of any such argument, we find that the Ordinance sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it. *See Kolender*, 461 U.S. at 358, 103 S. Ct. at 1858 (finding a law to be void for vagueness because it specified no core of prohibited conduct and permitted "'a standardless sweep allow[ing] policemen, prosecutors, and juries to pursue their personal predilections'") (quoting *Smith v. Goguen*, 415 U.S. 566,

-12-

574, 94 S. Ct. 1242, 1247-48, 39 L. Ed. 2d 605 (1974)).

Finally, J&B argues that the Ordinance is facially vague because the exception contains only one of the *Miller* obscenity test's three prongs. This argument is reminiscent of the Supreme Court's reasoning in *Reno v. ACLU*, __ U.S. __, 117 S. Ct. 2329, 2345, 138 L. Ed. 2d 874 (1997), in which the Court found certain terms in the Communications Decency Act of 1996 to be vague because the Act defined them by reference only to one of *Miller*'s three prongs. The offending terms in the Act were "indecent" and material that "in context, depicts or describes, in terms patently offensive as measured by contemporary community standards, sexual or excretory activities or organs." *Id*. at __, 117 S. Ct. at 2324. In rejecting the government's argument that these terms were no more vague than *Miller*'s definition of obscenity, the Court described the "lack[ing] of serious literary, artistic, political, or scientific value" prong as "particularly important" and "critically limit[ing] the uncertain scope of the obscenity definition." *Id*. at __, 117 S. Ct. at 2345. In contrast to the Communications Decency Act, the Ordinance includes this "particularly important" prong as its exception. Moreover, as the district court correctly noted, nudity and obscenity are not synonymous. *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 66, 101 S. Ct. 2176, 2181, 68 L. Ed. 2d 671 (1981); *Erznoznik*, 422 U.S. at 213, 95 S. Ct. at 2275. If the City were required to include all

-13-

three prongs of *Miller*, it would be regulating obscene nudity, and its ability to regulate nonobscene nudity would be eviscerated. Because *Barnes* plainly gives governments the power to regulate nonobscene nudity, as we discuss below, we reject J&B's argument.

In conclusion, we reiterate that because the Ordinance is not vague as applied to J&B, we have reviewed J&B's facial vagueness challenge only to determine whether the Ordinance contains real and substantial vagueness. We express no opinion as to whether less than substantial vagueness exists in the Ordinance; that is a task for future courts. *See Young*, 427 U.S. at 61, 96 S. Ct. at 2448; *Basiardanes*, 682 F.2d at 1210.

IV

A

We now turn to the question of whether the Ordinance is consistent with the First Amendment to the U.S. Constitution. While it is now beyond question that nonobscene nude dancing is protected by the First Amendment, even if "only marginally so," *see, e.g., Barnes,* 501 U.S. at 565-66, 111 S. Ct. at 2460 ("Nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so."); *Schad*, 452 U.S. at 66, 101 S. Ct. at 2181, it is also clear that the government can regulate such activity. "[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that

-14-

have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Young*, 427 U.S. at 70, 96 S. Ct. at 2452.

In *Barnes*, a three-judge plurality of the Supreme Court held that an enactment banning public nudity, as applied to nude dancing, can be upheld as a content-neutral time, place, and manner regulation if it comports with the intermediate scrutiny test enunciated in *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S. Ct. 1673, 1678-79, 20 L. Ed. 2d 672 (1968). *See Barnes*, 501 U.S. at 567, 111 S. Ct. at 2461. In *O'Brien*, the Court set out the four-part test as follows:

> [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 376-77, 88 S. Ct. at 1679. Using this test, the three-judge plurality upheld Indiana's prohibition on public nudity, as applied to nude dancing. *See Barnes*, 501 U.S. at 570, 111 S. Ct. at 2462-63. In a separate concurrence, Justice Souter agreed with the plurality that the *O'Brien* test should be used to determine whether a statute banning public nudity is a valid time, place, and manner regulation, but differed with regard to *O'Brien*'s

-15-

second prong))namely, the societal interest necessary to permit governmental regulation. *See Barnes*, 501 U.S. at 582, 111 S. Ct. at 2468-69 (Souter, J., concurring); *see also International Eateries of Am., Inc. v. Broward County*, 941 F.2d 1157, 1160 (11th Cir. 1991) (discussing differences between the plurality opinion and Justice Souter's concurrence). While the plurality found morality to be a sufficient governmental interest to permit regulation, *see Barnes*, 501 U.S. at 568-69, 111 S. Ct. at 2461-62, Justice Souter found that combating secondary effects was sufficient, but that morality was not. *Id.* at 582, 111 S. Ct. at 2468-69 (Souter, J., concurring). Justice Scalia concurred in the judgment, but adopted a different analysis, explaining that "the challenged regulation must be upheld, not because it survives some lower level of First Amendment scrutiny, but because, as a general law regulating conduct and not specifically directed at expression, it is not subject to First-Amendment scrutiny at all." *Id*. at 572, 111 S. Ct. at 2463 (Scalia, J., concurring).

Because no single opinion in *Barnes* commanded a majority, as an initial matter, we must decide which opinion sets forth the relevant standard under the First Amendment. J&B argues that precisely because no opinion commanded a majority, we cannot rely on *Barnes*, and must instead evaluate the Ordinance under the test set out in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S. Ct. 929, 89 L. Ed. 2d 29 (1986). "When a fragmented Court

-16-

decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993, 51 L. Ed. 2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 2923 n.15, 49 L. Ed. 2d 859 (1976)). Courts have generally adopted Justice Souter's concurrence as the narrowest opinion in *Barnes*. *See, e.g., Triplett Grille*, 40 F.3d at 134; *International Eateries,* 941 F.2d at 1160-61 (adopting Justice Souter's concurrence as the narrowest opinion because it was the closest to the secondary effects analysis of *Renton*). "While 'there is some awkwardness in attributing precedential value to an opinion of one Supreme Court justice to which no other justice adhered, it is the usual practice when that is the determinative opinion.'" *Triplett Grille*, 40 F.3d at 134 (quoting *Blum v. Witco Chem. Corp.,* 888 F.2d 975, 981 (3rd Cir. 1989)). We agree with the Sixth and Eleventh Circuits that Justice Souter's concurrence is the narrowest opinion in *Barnes*, and accordingly will follow Justice Souter's concurrence in deciding this appeal.

Before we turn to the merits of J&B's challenge to the Ordinance as applied to nude dancing, we note that, because we review the Ordinance under an intermediate scrutiny standard of review, the government bears the burden of justifying (*i.e.*, both

-17-

the burden of production and persuasion) the challenged statute. *See Renton*, 475 U.S. at 48, 106 S. Ct. at 929; *see also Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 664-65, 114 S. Ct. 2445, 2470, 129 L. Ed. 2d 497 (1994) (reaffirming that under the intermediate scrutiny standard of review, the government bears the burden of justifying the challenged enactment); *Phillips v. Borough of Keyport*, 107 F.3d 164, 173 (3rd Cir. 1997) (en banc).

B

1

The first prong of *O'Brien* requires that the government have the constitutional power to enact the regulation in question. J&B contended below that the Ordinance failed this prong because the City allegedly lacked the power to enact the Ordinance under state law. The district court found that the City had the constitutional power to enact this Ordinance under its police powers, and that, in any event, state law authorized the City to enact the Ordinance. Although on appeal J&B renews the argument it made below, we find that the district court correctly concluded that Jackson has the constitutional power to enact the Ordinance. *See Barnes*, 501 U.S. at 583, 111 S. Ct. at 2469 ("[I]t is clear that the prevention of such evils falls within the constitutional power of the State, which satisfies the first *O'Brien* criterion.").

2

Our attention is next directed toward *O'Brien*'s second

-18-

criterion))namely, whether the Ordinance "furthers an important or substantial governmental interest." *O'Brien*, 391 U.S. at 376-77, 88 S. Ct. at 1678-79. The district court concluded that under Justice Souter's concurrence in *Barnes*, secondary effects linked to adult entertainment are a sufficient governmental interest to justify a ban on public nudity, as applied to nude dancing. Relying on dicta from *Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255, 1258 n.1 (5th Cir. 1992), and Justice Souter's concurrence in *Barnes*, the court also determined that a government need not provide any evidence that a desire to combat secondary effects actually motivated it to enact an ordinance or that the challenged ordinance may further its interests. J&B disputes these conclusions, arguing that a government must still consider evidence of secondary effects, must do so prior to enacting an ordinance, and must determine how the ordinance may further its interests. As explained below, we agree with J&B that the government must produce evidence that the challenged ordinance may advance its interest in combating adverse secondary effects attendant to nude dancing. In doing so, however, the government is not limited to using evidence developed prior to enactment.

a

A local government's interest in preserving the quality and character of neighborhoods and urban centers can, if properly set forth, support restrictions on both public nudity and adult

-19-

entertainment.  *See Renton,* 475 U.S. at 50, 106 S. Ct. at 930 (stating that the government's "'interest in attempting to preserve the quality of urban life is one that must be accorded high respect'") (quoting *Young*, 427 U.S. at 71, 96 S. Ct. at 2453).  In setting forth this interest, a local government may place great weight upon the experiences of, and studies conducted by, other local governments, as well as opinions of courts from other jurisdictions.  *See Renton*, 475 U.S. at 51, 106 S. Ct. at 931.  Crucially, in *Renton*, the Court explained that

> [t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Id*. at 51-52; 106 S. Ct. at 931.  Thus, *Renton* teaches us that the government must produce *some* evidence of adverse secondary effects produced by public nudity, as applied to nude dancing, or adult entertainment in order to justify a challenged enactment using the secondary effects doctrine. *Id*. Justice Souter's concurrence in *Barnes* establishes that, in justifying a ban on public nudity, as applied to nude dancing, the government can meet this burden either by developing evidence of secondary effects prior to enactment or by adducing such evidence at trial. *See Barnes*, 501 U.S. at 582, 111 S. Ct. at 2469 (Souter, J., concurring) ("Our appropriate focus is not an empirical enquiry into the actual intent of the enacting

legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional."); *Phillips*, 107 F.3d at 178; *International Eateries*, 941 F.2d at 1161 ("[I]n order to uphold a statute regulating nude dancing, it is still necessary after *Barnes* that the statute meet the secondary effects test of *Renton*."). *Renton* also instructs us that a government must present sufficient evidence to demonstrate "a link between the regulation and the asserted governmental interest," under a "reasonable belief" standard in order to satisfy this prong of *O'Brien*. *See Renton*, 475 U.S. at 51-52, 106 S. Ct. at 931; *see also SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1274 (5th Cir. 1988).

Thus, the district court in this case misinterpreted Justice Souter's concurrence in *Barnes* because, although his concurrence allows a local government to justify a challenged ordinance based on evidence developed either prior to enactment or adduced at trial, it does not eliminate the government's burden of introducing sufficient evidence to justify the challenged ordinance. *See Barnes*, 501 U.S. at 582, 111 S. Ct. at 2469 (Souter, J., concurring); *International Eateries*, 941 F.2d at 1161. Our opinion in *Lakeland Lounge,* 973 F.2d at 1258-59, is not to the contrary.[7]

---

[7]     In addition to *Lakeland Lounge*, the district court relied on various state and district court opinions from around the country and the Sixth Circuit's opinion in *Triplett Grille,* 40 F.3d at 135. Although dicta from *Triplett Grille* suggests that *Barnes* may have obviated the government's need to provide evidence that secondary effects associated with adult entertainment motivated it to ban

We upheld the challenged ordinance there because the government adduced sufficient evidence at trial to establish that prior to enacting the ordinance, it had reviewed sufficient evidence to develop a reasonable belief that enacting the zoning ordinance would ameliorate secondary effects associated with adult entertainment. *Id.* at 1258-59. As such, *Lakeland Lounge* is consonant with our case law upholding ordinances regulating adult entertainment where the government has introduced sufficient evidence to justify the ordinance on the basis of preenactment legislative findings or evidence adduced at trial. *See Hang On*, 65 F.3d at 1256; *MD II Entertainment, Inc. v. City of Dallas*, 28 F.3d 492, 496 (5th Cir. 1994); *SDJ*, 837 F.2d at 1274 ("[U]nlike our review under a standard of rationality, we will not hypothesize such an objective or accept a naked assertion. Rather, we intrude into the regulatory decision process to the extent that we insist upon objective evidence of purpose))a study or findings. Insisting upon findings reduces the risk that a purported effort to regulate effect is a mask for regulation of content."). Accordingly, the district court erred in concluding that when the government attempts to justify a ban on public nudity as fulfilling a

_____

public nudity, as applied to nude dancing, the Sixth Circuit proceeded to examine the evidence in the record to determine whether the government had properly justified the ordinance, s*ee id.* at 135, as we do here. Indeed, the Sixth Circuit in *Triplett Grille* struck down the ordinance in question there because it concluded that the government had failed to introduce sufficient evidence to justify a complete ban on all nudity, including where the nudity occurred as part of serious artistic, literary, political or scientific expression. *See id*. at 136. Thus, *Triplett Grille* does not support the district court's conclusion.

substantial government interest based on the secondary effects

doctrine, as applied to nude dancing, it does not need to introduce

any evidence.[8]  "To insist on less is to reduce the First Amendment

to a charade." *Phillips*, 107 F.3d at 178.

b

Although it erroneously concluded that a government does not

need to introduce evidence to justify an ordinance regulating

public nudity challenged on First Amendment grounds, the district

court also found sufficient evidence in the record to determine

that the City enacted the Ordinance based on secondary effects

associated with public nudity, as applied to nude dancing.  The

district court based its conclusion upon two pieces of evidence.

First, the court noted that a preambulatory clause to the Ordinance

provides that "the City of Jackson has a legitimate interest in

---

[8]     J&B also argues that because the City first chose to adopt a zoning
ordinance, it could not adopt other measures designed to resolve related problems
without first finding that the zoning ordinance was inadequate to ameliorate the
secondary effects  previously identified.  Acceptance of J&B's argument would
require Jackson to produce its own studies in order to support this Ordinance or
find a study produced by another government in an almost identical position.
*Barnes* forecloses this argument:

> In light of *Renton*'s recognition that legislation seeking to combat
> the secondary effects of adult entertainment need not await
> localized proof of those effects, the State of Indiana could
> reasonably conclude that forbidding nude entertainment . . .
> furthers its interest in preventing prostitution, sexual assault,
> and associated crimes.  Given our recognition that "society's
> interest in protecting this type of expression is of a wholly
> different, and lesser, magnitude than the interest in untrammeled
> political debate," . . . I do not believe that a State is required
> affirmatively to undertake to litigate this issue repeatedly in
> every case.

501 U.S. at 584-85, 111 S. Ct. at 2470 (Souter, J. concurring) (internal
citations omitted).

-23-

combating secondary effects associated with public places where persons who are physically present appear nude amongst strangers." Second, the court noted that the City enacted an adult entertainment zoning ordinance in 1991 ("1991 zoning ordinance"), and that the composition of the City Council that enacted the 1991 zoning ordinance was the same as the City Council that enacted the Ordinance in question here.

In *SDJ*, we explained how a government can justify a challenged ordinance as fulfilling a substantial interest based on the secondary effects doctrine:

> [A] city may establish its "substantial interest" in the regulation by compiling a record with evidence that it may be "reasonably believed to be relevant to the problem that the city addresses." We do not ask whether the regulator subjectively believed or was motivated by other concerns, but whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion. Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities.

*SDJ*, 837 F.2d at 1274 (internal citations omitted). As noted above, the City must demonstrate "a link between the regulation and the asserted governmental interest," under a "reasonable belief" standard. *See Renton*, 475 U.S. at 51-52, 106 S. Ct. at 931. Because the First Amendment protects nonobscene nude dancing, *see Barnes*, 501 U.S. at 565-66, 111 S. Ct. at 2463, we again note that on summary judgment and at trial, the government bears the burden of justifying the challenged enactment by introducing sufficient evidence. *Renton*, 475 U.S. at 48, 106 S. Ct. at 929; *see also*

*Turner Broadcasting,* 512 U.S. at 664-65, 114 S. Ct. at 2470;

*Phillips*, 107 F.3d at 173.

Our task of reviewing the district court's finding that sufficient evidence exists in the record to determine that the City has met its burden under this prong of *O'Brien* is complicated by its conclusion that a government does not need to provide any evidence to justify a challenged enactment. As a result of this conclusion, the court determined that the City had satisfied this prong based on an extremely sparse record. Excluding procedural motions, the record consists only of several unamended and amended complaints and answers by J&B and the City, respectively, J&B's summary judgment motion, and the order granting summary judgment. The record contains neither any deposition testimony nor any affidavit from any City council member or city employee that might clarify the City's motives for enacting the Ordinance. The City also did not file a summary judgment motion with attached exhibits that might illuminate its motives.[9] In fact, other than its answers to J&B's complaint, the only nonprocedural written document in the record submitted by the City, either to this Court or the district court, is its 15-page appellate brief that is similarly unenlightening. Finally, the City has not presented the record of evidentiary hearings, if any, conducted by the district court.

The first piece of evidence that the district court relied

---

[9]     *See supra* note 3.

upon to conclude that the City enacted the Ordinance to combat secondary effects linked to public nudity is the Ordinance's preambulatory clause stating that "the City of Jackson has a legitimate interest in combating secondary effects associated with public places where persons who are physically present appear nude amongst strangers."  In *Lakeland Lounge,* we explained that the mere incantation of the words "secondary effects" may not save a statute "formulated without specific attention to specific secondary effects." *Lakeland Lounge*, 973 F.2d at 1259. No explanation of what specific secondary effects motivated Jackson to enact the Ordinance appears in its text, and the City Council failed to make any specific legislative findings prior to enactment. *See id.; see also Phillips*, 107 F.3d at 173 ("There is no articulation by the state of what it perceives its relevant interests to be and how it thinks they will be served.  This is particularly troublesome in a case, like this, where the legislative findings speak in terms of 'serious objectionable operational characteristics,' 'deleterious effects,' and 'the deterioration of the community' without identifying in any way those 'characteristics,' those 'effects,' or that 'deterioration.'").  Moreover, because the district court granted summary judgment before the record was fully developed, the City did not present evidence in court to demonstrate "a current governmental interest" that might validate the Ordinance.  *Barnes*, 501 U.S. at 582, 111 S. Ct. at 2469 (Souter, J., concurring)

-26-

(upholding ordinance in absence of preenactment evidence where government presented sufficient evidence at trial to justify the ordinance); *Renton*, 475 U.S. at 51-52, 106 S. Ct. at 931 (upholding ordinance regulating adult entertainment where government justified ordinance by placing sufficient studies into evidence to establish that the studies could reasonably be believed to be relevant to the problems the government faced). Further, no evidence exists to indicate how the City believed that the Ordinance might further its interests. *See DLS*, 107 F.3d at 410 (upholding ordinance regulating nude dancing where government introduced sufficient evidence to enable the court to determine that the government had a reasonable basis for determining that the ordinance might further its interests). Thus, this preambulatory clause may be one piece of evidence in support of the Ordinance, if properly explained. On the skeletal record before us, however, and in the absence of any evidence suggesting that the City enacted the Ordinance with "specific attention to specific secondary effects" or any justification at trial and explanation as to how the Ordinance may further the City's interests, this clause is insufficient to justify the Ordinance.

The second piece of evidence that the district court relied upon to find that the City enacted the Ordinance to combat secondary effects linked to public nudity was the City's experience in enacting the 1991 zoning ordinance. Prior to enacting the 1991

zoning ordinance, Jackson's City Council received information regarding studies on secondary effects associated with adult entertainment in other cities. *See Lakeland Lounge*, 973 F.2d at 1258-59. Other than the inference that Jackson must have had the same interests because the composition of the City Council that enacted the Ordinance was the same as the City Council that enacted the 1991 zoning ordinance, however, the City has offered no reasoned explanation linking the two ordinances, for how they seek to further similar interests, or for how it could reasonably conclude that banning public nudity might further its interests. Therefore, in light of *Barnes*, we find this single piece of evidence to be insufficient to justify the Ordinance as fulfilling a substantial governmental interest for the following reasons. *Barnes* eschews an examination of the motives of legislators and their knowledge in favor of a determination as to whether the challenged ordinance may be valid in the service of a current governmental interest and some evidence that the challenged enactment may further that interest. *See Barnes*, 501 U.S. at 582, 111 S. Ct. at 2469 (Souter, J., concurring) ("At least as to the regulation of expressive conduct, '[w]e decline to void [a statute] essentially on the ground that it is unwise legislation which [the legislator] had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it.'") (alterations in original) (quoting

-28-

*O'Brien*, 391 U.S. at 384, 88 S. Ct. at 1683). Thus, the district court's focus on the City Council members' knowledge directs our attention precisely where it should not be. Moreover, under the intermediate scrutiny standard of review, the government bears the burden of providing sufficient evidence to justify a regulation, not the district court. *See Renton*, 475 U.S. at 48, 96 S. Ct. at 929; *see also Turner Broadcasting*, 512 U.S. at 664-65, 114 S. Ct. at 2470. The district court in this case completely obviated the City's burden by attempting to justify the Ordinance for the City before the City had a chance to do so when it prematurely granted summary judgment, and we thus have no way of knowing how the City might justify the Ordinance.

Prudence also suggests that making the entire determination of whether a challenged ordinance is constitutional hinge upon the prior experiences of legislators, absent reasoned explanation, is unwise. While the district court's conclusion that the prior experiences of legislators can justify a challenged ordinance without reasoned explanation linking the earlier enactment to the challenged ordinance may be easily applied in this case, we may quickly become bogged down in a morass of line-drawing in future cases. First, what if some but not all of the legislators have previously received information on secondary effects. How many are enough? Half? Two-thirds? How long can pass between the review of the materials and the challenged ordinance? What if the

applicable law has changed in the interim?  As Justice Souter's concurrence in *Barnes* suggests, there are no easy answers to these questions.  Prudence thus dictates that the past experiences of legislators, while perhaps relevant in determining whether sufficient evidence exists to uphold an ordinance, are not factually sufficient to uphold an ordinance in and of themselves.

Our conclusion is in accord with the Third Circuit's recent *en banc* opinion in *Phillips*, 107 F.3d at 178.  After the Borough enacted a zoning statute regulating adult entertainment, Phillips, who desired to open an adult video and bookstore, brought suit challenging the constitutionality of the zoning statute on grounds that the Borough had failed to make preenactment legislative findings.  The district court partially granted the Borough's motion to dismiss, and later granted summary judgment in favor of the Borough. *Id*. at 173.  The Third Circuit vacated the orders and remanded the case because the district court had granted the motions to dismiss and for summary judgment before the Borough had articulated what governmental interests it sought to advance and how the ordinance might further those interests.[10]  *Id*.

---

[10]     As the Third Circuit aptly noted:

It may well be that the defendants here, by pointing to studies from other towns and to other evidence of legislative facts, will be able to carry their burden of showing that the ordinance is reasonably designed to address the reasonably foreseeable secondary effect problems.  Nevertheless, our First Amendment jurisprudence requires that the Borough identify the justifying secondary effects with some particularity, that they offer some record support for the existence of those effects and for the Ordinance's amelioration thereof, and that the plaintiffs be afforded some opportunity to

In conclusion, as a result of the district court's premature grant of summary judgment, the record now before us is simply too bare to support its conclusion that the City enacted the Ordinance based on a desire to combat secondary effects linked to public nudity, as applied to nude dancing. We are not in a position to review this conclusion or determine whether the City could have a reasonable belief that the Ordinance might further its interests. Because the burden of proof under the intermediate scrutiny standard of review is on the City and insufficient evidence exists to indicate that the City has met its burden under this prong on the record now before us, we vacate the district court's grant of summary judgment in favor of the City.[11]

3

*O'Brien*'s third criterion requires that "the governmental interest be unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 376-77, 88 S. Ct. at 1678-79. Both *Renton* and

---

offer evidence in support of the allegations of their complaint. To insist on less is to reduce the First Amendment to a charade in this area.

*Phillips*, 107 F.3d at 175.

[11] We have vacated the district court's grant of summary judgment on factual grounds. Because the Ordinance will not be a reasonable time, place and manner regulation if it fails even one prong of *O'Brien,* J&B has advanced various other arguments as to why it is entitled to summary judgment as a matter of law that, if successful, would obviate the need for a remand, and the district court granted summary judgment to the City in the same order in which it denied J&B's motion for summary judgment, we will proceed to review J&B's remaining arguments as to why it is entitled to summary judgment as a matter of law. *See Phillips*, 107 F.3d at 171 (first vacating the district court's order because the district court granted summary judgment before the City justified the challenged ordinance and then going on to consider Phillip's arguments as to why he was entitled to summary judgment as a matter of law).

the plurality and Justice Souter's concurrence in *Barnes* held that a regulation satisfies this criterion and is content neutral for purposes of applying the *O'Brien* test if it can be "'*justified* without reference to the content of the regulated speech.'" *Barnes*, 501 U.S. at 586, 111 S. Ct. at 2471 (emphasis in original) (quoting *Renton*, 475 U.S. at 48, 106 S. Ct. 929). The majority in *Renton* and Justice Souter in *Barnes* found that secondary effects associated with adult theaters and public nudity, as applied to nude dancing, respectively, can justify their restriction or ban. *See Barnes*, 501 U.S. at 585-86, 111 S. Ct. at 2470-71; *Renton*, 475 U.S. at 47-48, 106 S. Ct. at 929. "Because the State's interest in banning nude dancing results from a simple correlation of such dancing with other evils, rather than from a relationship between the other evils and the expressive component of the dancing, the interest is unrelated to the suppression of free expression." *Barnes*, 501 U.S. at 586, 111 S. Ct. at 2471 (Souter, J., concurring). If *Barnes* applies, therefore, the City has satisfied the third prong of *O'Brien*.

Perhaps sensing that it has a tough row to hoe if *Barnes* applies, J&B contends that *Barnes-O'Brien* analytical framework is inapplicable because the framework only applies to content neutral laws, and the Ordinance is not content neutral for two reasons. J&B first argues that the Ordinance is not content neutral because it is underinclusive. J&B contends that the Indiana statute in

-32-

question in *Barnes* banned all public nudity, while the Ordinance's exception exempts persons "engaged in expressing a matter of serious literary, artistic, scientific or political value" from its reach.[12] As such, J&B avers that whether the Ordinance covers a particular instance of nudity can be determined only by examining the content of the nudity, which it claims is precisely what the First Amendment prohibits and triggers the strict scrutiny standard set out in *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). J&B alternatively contends that the Ordinance is not content neutral because the City enacted the Ordinance for an improper purpose))*i.e.*, out of dislike for the erotic message conveyed by nude dancing. The district court rejected these arguments because it found the City's predominate purpose in enacting the Ordinance to be ameliorating secondary effects associated with public nudity, rather than disagreeing with any erotic message conveyed by nude dancing.

Several reasons compel us to reject J&B's underinclusiveness argument. First, although the Indiana statute in question in *Barnes* facially banned all nudity, the Indiana Supreme Court appears to have previously supplied a limiting construction in cases where "some nudity [occurs] as a part of some larger form of expression

---

[12] J&B also contends that the Ordinance is not content neutral because it neither specifies who will determine whether someone is "engaged in expressing a matter of serious literary, artistic, scientific or political value" nor provides any guidelines on how to make that determination. We construe this as an argument that the Ordinance is vague, which we addressed in Section III.B.

meriting protection, when the communication of ideas is involved."
*Indiana v. Baysinger*, 397 N.E. 2d 580, 587 (Ind. 1979).
Notwithstanding this limiting construction (quite similar to the exception in Jackson's Ordinance), a plurality of the U.S. Supreme Court and Justice Souter found the statute to be content neutral. *See Barnes*, 501 U.S. at 564 n.1, 111 S. Ct. at 2459 (discussing *Baysinger*). Moreover, concurring in *Barnes*, Justice Souter questioned whether an across-the-board ban on public nudity could survive an overbreadth challenge if it did not contain an exception for serious artistic productions such as "Hair" or "Equus." *See Barnes*, 501 U.S. at 585 n.2, 111 S. Ct. at 2470 n.2 ("It is difficult to see, for example, how the enforcement of Indiana's statute against nudity in a production of 'Hair' or 'Equus' somewhere other than an 'adult' theater would further the State's interest in avoiding harmful secondary effects."); *see also Triplett Grille,* 40 F.3d at 136 (striking down an ordinance banning all public nudity as overbroad because it did not contain an exception for serious artistic entertainment). Acceptance of J&B's argument would place Jackson and other governments between Scylla and Charybdis: if a government attempted to ban all nudity, its enactment would become susceptible to an overbreadth challenge, while if it included an exception for some nudity, it would open itself up to a content neutrality challenge. *See Miller v. Civil City of South Bend*, 904 F.2d 1081, 1121 (7th Cir. 1990) (en banc)

(Easterbrook, J., dissenting) ("A decision saying that a statute does not apply to protected expression recognizes the supremacy of the Constitution over state law; to acknowledge a limit the Constitution imposes on legislation is not to abandon the generality of the law."), *reversed sub nom. Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991). Further, *Barnes* as well as other Supreme Court cases suggest that where no adverse secondary effects linked to public nudity exist))such as presumably would not occur at a performance of "Hair" or "Salome"))the government can except the nudity from its otherwise general prohibition without destroying the enactment's content neutrality. *See Barnes*, 501 U.S. at 585 n.2, 111 S. Ct. at 2470 n.2; *Young*, 427 U.S. at 82 n.6, 96 S. Ct. at 2458 n.6 (Stevens, J., concurring) ("[E]ven if this were a case involving a special governmental response to the content of one type of movie, it is possible that the result would be supported by a line of cases recognizing that the government can tailor its reaction to different types of speech according to the degree to which its special and overriding interests are implicated."); *see also DLS*, 107 F.3d at 411-12 (rejecting similar underinclusiveness argument).

J&B alternatively contends that the Ordinance is not content neutral because the City enacted the Ordinance for an improper purpose. Pointing to the timing of the Ordinance's enactment))just one month after J&B opened Legends Cabaret))J&B claims that despite

the Ordinance's facial ban on all public nudity, the City enacted the Ordinance as a result of its dislike for the erotic message conveyed by nude dancing.[13]  If this argument were true, Jackson would be targeting an activity "precisely because of its communicative attributes," *Barnes*, 501 S. Ct. at 577, 111 S. Ct. at 2466 (Scalia, J., concurring), thereby rendering the Ordinance presumptively unconstitutional. *See, e.g., United States v. Eichman*, 496 U.S. 310, 110 S. Ct. 2404, 110 L. Ed. 2d 287 (1990) (burning flag); *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (same).

"Courts, however, normally do not look behind the legislative findings and policy to attempt to discern the hidden (as distinguished from the stated) purpose of the legislation." *Ambassador Books & Video v. City of Little Rock*, 20 F.3d 858, 863-64 (8th Cir. 1994); *see also D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146 (4th Cir. 1991) (rejecting argument that legislators enacted a ban on public nudity because they disagreed with the message conveyed by nude dancing where ban was enacted shortly after nude dancing club announced plans to open). Moreover, although one of the Ordinance's preambulatory clauses provides that the City enacted the Ordinance because of its interest in protecting order and morality, another clause states

---

[13]     Neither the record nor the parties' briefs indicates whether other nude dancing clubs have previously operated in Jackson.  If they have, this argument would be frivolous and merit no discussion.

that the City enacted this regulation in response to secondary effects associated with public nudity. Finally, J&B does not, and indeed could not, argue that the Ordinance covers only nude dancing. Although the Ordinance makes some exceptions, it targets public nudity. While J&B may argue that the Ordinance places a greater burden on it than on others, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791, 109 S. Ct. at 2754. Therefore, we reject J&B's argument that the City enacted the Ordinance for an improper reason.

J&B has failed to demonstrate that the Ordinance is not content neutral. The Ordinance thus complies with *O'Brien*'s third criterion.[14]

4

J&B additionally contends that the Ordinance fails *O'Brien*'s fourth prong because the City provides no alternative avenues of communication. The district court held that because *Barnes* gave governments the power to ban nude dancing altogether, no alternative avenues of communication need be provided.

---

[14]    Quoting the old saw that "beauty is in the eye of the beholder," J&B also argues that the Ordinance is not content neutral because the government is incapable of distinguishing one form of "art" from another. This argument echoes Judge Posner's concurrence in *City of South Bend*, 904 F.2d at 1089-1104. While this position may have much to commend it, the Supreme Court unambiguously refused to adopt it when reversing *City of South Bend* in *Barnes.* Accordingly, we need not comment further upon this argument.

The plurality opinion in *Barnes* upheld the ban on public nudity under this prong because it found Indiana's requirements to be reasonable: "Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose." *Barnes*, 501 U.S. at 572, 111 S. Ct. at 2463. Justice Souter expressed a similar view: "Pasties and a G-string moderate the expression to some degree, to be sure, but only to a degree. Dropping the final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message." *Id.* at 587, 111 S. Ct. at 2471.

We too find the City's restrictions to be reasonable. Jackson's Ordinance defines "nudity" as "the showing of the human genitals, anus, or the female nipple." J&B's dancers presumably could avoid violating the Ordinance by wearing pasties and a G-string that covered their nipples, anuses, and genitalia. Thus, J&B's dancers may have ample avenues of communication open to express their erotic message; they would be prevented only from "dropping the final stitch." *Barnes*, 501 U.S. at 587, 111 S. Ct. at 2471 (Souter, J., concurring). Although not being permitted to drop that final stitch may decrease the number of patrons who desire to see the dancing at Legends Cabaret, "[t]he inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of this ordinance upon freedom

-38-

of expression." *Young*, 427 U.S. at 78, 96 S. Ct. at 2456 (Powell, J., concurring). Accordingly, we conclude that Jackson has satisfied *O'Brien*'s fourth criterion.

V

J&B finally contends that the Ordinance is preempted by state law. Mississippi has a "home rule" statute that grants cities the power to enact ordinances related to the care, management, and control of municipal affairs, as long as the ordinance is not inconsistent with the state constitution or a state statute.[15] *See* MISS. CODE ANN. § 21-17-5. Section 21-17-5 also provides that the powers given to municipalities are complete without the existence of or reference to any specific state statute.[16] *Id*. J&B

---

[15]    MISSISSIPPI CODE ANN. § 21-17-5 provides that

[t]he governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs . . . In addition to those powers granted by specific provisions of general law, . . . municipalities shall have the power to adopt any . . . ordinances with respect to such municipal affairs . . . which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi . . . [T]he powers granted to . . . municipalities in this section are complete without the existence of or reference to any specific authority granted in any other statute or law of the State of Mississippi.

[16]    Prior to 1992, a city could "only exercise such powers as are delegated by the Legislature . . . [and had] no power except that delegated to it by the state . . . [and its] powers . . . [were] to be construed most strongly against an asserted right not clearly given and [could not] be extended by mere implication." *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So. 2d 767, 769 (Miss. 1972). Relying on *Hattiesburg Firefighters*, several cases struck down ordinances regulating obscenity on grounds that municipalities were not authorized by state law to regulate obscenity. *See Videophile, Inc. v. City of Hattiesburg*, 601 F.Supp. 552, 553-54 (S.D. Miss. 1985); *Fernwood Books and Video, Inc. v. City of Jackson,* 601 F.Supp. 1093, 1095-96 (S.D. Miss. 1984). In 1992, Mississippi increased the power of municipalities by amending § 21-17-5 to read: "in addition to those powers granted by specific provisions of general law, . . . municipalities shall have the power to adopt any . . . ordinances with

identifies several state statutes with which it claims the Ordinance is inconsistent.

J&B first contends that Mississippi allows all nonlewd public nudity because MISS. CODE ANN. § 97-29-31 prohibits wilful and lewd nudity,[17] and that the Ordinance is inconsistent with § 97-29-31 because it prohibits nonlewd public nudity. The Mississippi Supreme Court has explained on several occasions that an ordinance is "inconsistent" with a state statute only if the two are in direct conflict, as determined by reference to the facts of the case at hand. *See Maynard v. City of Tupelo*, 691 So. 2d 385, 388 (Miss. 1997); *City of Jackson v. Lee*, 252 So. 2d 897, 898 (Miss. 1971). Ordinances that supplement or address a different subject matter than a state statute are not inconsistent with the statute unless the state has explicitly provided that localities cannot further regulate a given area. *See Lee*, 252 So. 2d at 897. Silence on the part of the state does not give rise to an inference that the state has prohibited localities from enacting ordinances further regulating an area. *See Maynard*, 691 So. 2d at 388. Thus, the state's ban of lewd public nudity))and silence on the subject of

respect to such municipal affairs . . . which are not inconsistent with" Mississippi law.  MISS. CODE ANN. § 21-17-5 (Supp. 1997). Thus, Mississippi statutorily abrogated the holdings of *Videophile* and *Fernwood Books*, and contrary to the arguments of J&B, we will not rely upon those cases.

[17]    Section 97-29-31 provides:  "A person who wilfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, is guilty of a misdemeanor and, on conviction, shall be punished by a fine not exceeding five hundred dollars ($500.00) or be imprisoned not exceeding six (6) months, or both."

nonlewd public nudity))does not give rise to an inference that the state has expressed an intent to allow nonlewd public nudity. *See id.* This conclusion is strengthened by MISS. CODE ANN. § 19-5-103, which permits boards of supervisors of counties containing or adjacent to a city with a population of at least 200,000 to regulate public displays of nudity. Although this statute is inapplicable here,[18] its existence further suggests that Mississippi intended to allow additional regulation of public nudity by localities. *See also* MISS. CODE ANN. § 21-19-15 (granting police powers to municipalities but not to boards of supervisors). Accordingly, we reject J&B's argument that Mississippi intended to permit nonlewd public nudity by banning lewd nudity.

J&B further argues that the Ordinance directly contradicts § 97-29-31 because the Ordinance, through the exception, allegedly allows lewd nudity if the nudity occurs when a person is "engaged in expressing a matter of serious literary, artistic, scientific or political value." Contrary to J&B's argument, the Ordinance and § 97-29-31 may, in fact, overlap. Neither § 97-29-31 nor the two reported cases applying this section define "lewdly." *See Pendergrass v. Mississippi*, 193 So. 2d 126, 128 (Miss. 1966) (reversing the conviction of a nude sunbather under this section); *Stark v. Mississippi*, 33 So. 175, 175 (Miss. 1903) (overturning

---

[18] By its terms, this section is inapplicable for two reasons. First, Jackson had a population of 196,637 in the 1990 federal census. U.S. DEP'T OF COMMERCE, COUNTY AND CITY DATA BOOK 770 (1994). Second, the statute grants the power to regulate public nudity to county boards of supervisors, not to city councils.

conviction under this section where indictment omitted the term "lewdly"). Other public indecency statutes in other states, however, generally define "lewd" by reference to the *Miller* definition of obscenity, the third prong of which is identical to the Ordinance's exception. *See South Carolina v. Bouye*, 484 S.E. 2d 461, 464 (S.C. 1997) (noting that dictionaries define "lewd" and "obscene" synonymously, and holding that a statute prohibiting lewd nudity covers only obscenity); *Louisiana v. Crater*, 388 So. 2d 802, 803 (La. 1980) (finding a state statute prohibiting lewd dancing void for vagueness because it might reach more than obscene dancing); *City of Seattle v. Johnson*, 791 P.2d 266, 269 (Wash. Ct. App. 1990) (holding city's lewd conduct ordinance facially overbroad). Section 97-29-31, to be constitutional, may thus include an exception in the case of a person "engaged in expressing a matter of serious literary, artistic, scientific or political value." *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 498-99, 105 S. Ct. 2794, 2798-99, 86 L. Ed. 2d 394 (1985) (partially invalidating Washington's public indecency statute because it contained an overbroad definition of lewdness); *Hill,* 482 U.S. at 468-70, 107 S. Ct. at 2513-14. If so, § 97-29-31 and the Ordinance may overlap, rather than being inconsistent. *See, e.g., City of Hattiesburg v. Region XII Comm'n on Mental Health and Retardation*, 654 So. 2d 516, 518 (Miss. 1995) (rejecting state law preemption argument where state statute and municipality ordinance

-42-

overlapped); *Pap's A.M. v. City of Erie*, 674 A. 2d 338, 347 (Pa. Commw. Ct. 1996) (same).

J&B further contends that the Ordinance is inconsistent with MISS. CODE ANN. § 97-29-103, which defines obscenity, because the Ordinance contains only one prong of § 97-29-103's three-part obscenity test.[19]   Section 97-29-103's definition of obscenity mirrors the three-pronged *Miller* obscenity test, while the Ordinance only contains the "serious literary, artistic, scientific or political value" prong.  We reject J&B's argument because, as the Supreme Court has noted on several occasions, nudity and obscenity are not synonymous, s*ee Schad,* 452 U.S. at 66, 101 S. Ct. at 2181; *Erznoznik*, 422 U.S. at 213, 95 S. Ct. at 2275, and therefore the state's ban on the latter does not preempt the City's ban on the former. *See Maynard*, 691 So. 2d at 388.  Moreover, as we noted in our discussion of vagueness, *supra*, if the City were required to include all three prongs of *Miller* and MISS. CODE ANN. § 97-29-103, it could regulate only obscene nudity, which would

---

[19]    MISS. CODE ANN. § 97-29-103 provides that

(1) Material or performance is obscene if:

(a)    To the average person, applying contemporary community standards, taken as a whole, it appeals to the prurient interest, that is, a lustful, erotic, shameful, or morbid interest in nudity, sex or excretion; and

(b)    The material taken as a whole lacks serious literary, artistic, political or scientific value; and

(c)    The material depicts or describes in a patently offensive way, sexual conduct specifically defined in subparagraphs (i) through (v) below: . . .

eviscerate its ability to regulate nonobscene nudity. *Cf*. *SDJ*, 837 F.2d at 1280 (rejecting topless bar's argument that state law preempted local ordinance because the state law addressed a different, albeit related, area than did the local ordinance). To the extent that MISS. CODE ANN. § 97-29-103 and the Ordinance overlap, as noted above, no preemption results. *See City of Hattiesburg*, 654 So. 2d at 518.

Finally, J&B argues that MISS. CODE ANN. § 19-5-103,[20] which defines "nudity" for purposes of determining the regulatory powers of a county board of supervisors, constitutes the state's official definition of nudity for all purposes, and that because the Ordinance's definition of nudity is inconsistent with this statute, the Ordinance is preempted. *See Steverson v. City of Vicksburg*, 900 F. Supp. 1, 11 n.9 (S.D. Miss. 1994) (suggesting in dicta that this section may be the state's definition of nudity). The plain language of the statute, however, contradicts J&B's argument: "For purposes of this section the term "nudity" means . . ." In our view, the state would not have begun this statute with the words, "[f]or purposes of this section" if the state had wanted to create an all-encompassing definition of nudity. Bearing in mind the

---

[20] In relevant part, § 19-5-103 provides:

For the purposes of this section the term "nudity" means uncovered, or less than opaquely covered, postpubertal human genitals, pubic areas, the postpubertal human female breast below a point immediately above the top of the areola, or the covered human male genitals in a discernibly turgid state. For purposes of this definition, a female breast is considered uncovered if the nipple only or the nipple and areola only are uncovered.

Mississippi Supreme Court's guidance that silence on the part of the state does not indicate an intent to preempt, *see Maynard,* 691 So. 2d at 388, we are hesitant to say that because Mississippi has defined "nudity" for purposes of a county board of supervisors' powers, this definition should apply to municipalities as well. Since § 21-17-5 now gives municipalities control over the care, management, and control of municipal affairs "without the existence of or reference to" specific authority delegated by the state, and § 19-5-103 applies only to county boards of supervisors, we find that § 19-5-103 and the Ordinance are not inconsistent. We thus conclude that the Ordinance is not preempted by state law.

## VI

For the foregoing reasons, the district court's grant of summary judgment in favor of the City is VACATED. J&B's arguments for summary judgment as a matter of law are DENIED. The case is REMANDED for proceedings consistent with this opinion.

APPENDIX A

ORDINANCE PROHIBITING NUDITY IN A PUBLIC PLACE

WHEREAS, the City of Jackson has a governmental interest in protecting order and morality and the City recognizes the societal disapproval of nudity in public places and amongst strangers; and

WHEREAS, the City of Jackson has a legitimate interest in combating secondary effects associated with public places where persons who are physically present appear nude amongst strangers;

WHEREAS, the Supreme Court of the United States in *Barnes v. Glen Theatre, Inc.*, has held that a governing authority may prohibit nudity in public places;

NOW, THEREFORE, BE IT ORDAINED:

Public nudity

SECTION 1 (A): A person physically present in a public place who is not engaged in expressing a matter of serious literary, artistic, scientific or political value who knowingly or intentionally:

(1) engages in sexual intercourse;
(2) appears in a state of nudity; or
(3) fondles the genitals of himself, herself, or another person;

commits public nudity, a misdemeanor.

(b) 'Nudity' means the showing of the human genital, anus, or the female nipple.

SECTION 2: Any supervisor, manager, property owner, business owner, or employer who shall knowingly suffer or permit any person to engage in public nudity on premises under their control shall be guilty of a misdemeanor.